NOT DESIGNATED FOR PUBLICATION

No. 122,202

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of G.W. and J.W.,
Minor Children.

MEMORANDUM OPINION

Appeal from Johnson District Court; KATHLEEN SLOAN, judge. Opinion filed May 15, 2020.
Affirmed.

*Richard P. Klein*, of Olathe, for appellant.

*Elizabeth A. Billinger*, assistant district attorney, and *Stephen M. Howe*, district attorney, for
appellee.

Before ARNOLD-BURGER, C.J., MALONE and GARDNER, JJ.

PER CURIAM:  M.R. (Mother) appeals the district court's decision terminating her
parental rights over her children, G.W. and J.W. Mother stipulated that she was an unfit
parent before the termination hearing, but she claims the district court erred in finding
that her unfitness was unlikely to change in the foreseeable future. She also claims the
district court abused its discretion in finding that termination of her parental rights was in
the children's best interests. Finding no error, we affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

J.W., a female, was born in 2010, and G.W., a male, was born in 2012. This was
the second child in need of care (CINC) case involving these two children. In the earlier

1

case, the children were removed from Mother's home in 2014 and placed with Father. Mother's parental rights over three other children were terminated in the earlier case.

On December 14, 2017, the State filed a petition alleging G.W. and J.W were CINC. That same day, after a temporary custody hearing, the district court placed the children in the temporary custody of the Department for Children and Families (DCF) because of Mother's incarceration and Father's inability to care for them. On March 8, 2018, Mother did not contest the petition, and the district court adjudicated the children as CINC. The district court ordered a six-month reintegration plan for both parents.

Efforts to reintegrate the family were unsuccessful. On January 15, 2019, the State filed a motion to terminate parental rights, alleging Mother had failed to consistently exercise visitation with her children; failed to provide proof of housing, income, or transportation; failed to complete substance abuse counseling; failed to regularly participate in therapy; failed to complete Higher Ground; and failed to provide proof of regular urinalysis (UA) tests as requested. At a hearing on May 14, 2019, Mother and Father stipulated that they were unfit parents. The district court continued the hearing 90 days to give the parents a chance to make progress toward reintegration.

The district court held the termination hearing on August 30, 2019. At that hearing, Father signed a relinquishment of his parental rights. The State called eight witnesses, and the guardian ad litem (GAL) called an additional witness. Mother did not testify and called no witnesses. We will summarize the testimony of the witnesses.

Sara Larson, a licensed substance abuse specialist at Heartland RADAC, completed a substance abuse assessment of Mother on June 7, 2018. Mother admitted to Larson that she used PCP either every day or every other day from age 29 to her current age of 37. Larson recommended intensive outpatient treatment until Mother could be admitted into an inpatient facility.

Kara Hook was a case manager at Johnson County Mental Health and began working with Mother in May 2018. Mother was diagnosed with major depressive disorder, mild PCP use, and complicated bereavement. Hook testified that Mirrors, Inc. was ready to admit Mother for their 28-day inpatient program on June 14, 2018, but Mother was not ready because she had not set up rent and utility payments for the next month or secured her apartment. Hook offered to drive Mother to inpatient treatment on June 18 and went to her home, but Mother never came down to the car. Mother also did not go with Hook to inpatient treatment on June 25 and August 28. Because of a car accident, Hook waited to try again until October 4, but Mother could not be admitted then because she needed a new assessment. Because Mother admitted she was still using PCP, Hook shifted her efforts to finding outpatient treatment. On March 18, 2019, Mother was admitted to Mirrors for inpatient treatment but left after nine days without completing the program, complaining of pain from two recent car accidents. On April 18, 2019, when Hook met with Mother again, Mother admitted she was still using PCP every three days.

Shana Takacs, a clinician at Johnson County Mental Health, had worked with Mother since April 29, 2019. Mother admitted that she had relapsed on July 4, 2019. Takacs testified Mother was not yet ready to be discharged from their treatment program due to her recent relapse.

Lydia Shackelford was a child protection specialist for DCF from 2015-2018. She investigated a report of emotional abuse of G.W. and J.W. and physical abuse of G.W. by Mother in November 2017. J.W. told Shackelford about an incident where a neighbor hit Mother after Mother tried to stop the neighbor from hitting his wife. Shackelford went to Mother's home on December 11, 2017, to speak with Mother and discovered Mother being arrested for warrants. She testified the home had wet clothes strewn around and smelled like mildew.

Jacqueline Ross was a licensed clinical social worker assigned to work with Mother and the children on February 25, 2019. Ross' role was to facilitate therapeutic family visits. She testified G.W. did not want to go back to live with Mother because he was afraid of a man that had hit her. It was almost impossible for Ross to redirect G.W. from that subject. At another visit, G.W. repeatedly said to Mother that she used to beat him with a belt. Mother grabbed G.W. and asked, "[W]hat's wrong with you?" Ross believed Mother's actions were abusive and recommended an end to the therapeutic visits because they were not in the children's best interests. Mother told Ross on several occasions that she did not need substance abuse treatment.

Judy Tauber, a Court Appointed Special Advocate (CASA), testified for the GAL. Tauber served as the CASA for G.W. and J.W. since January 24, 2018. She testified both children originally had difficulty in their placements and GW had an IEP and ADHD. Tauber testified G.W. was more agitated and aggressive following visits with Mother. She also testified the children mostly just asked Mother for stuff during visits.

Laran Brice was a family support worker with KVC. Brice testified Mother missed 30 visitations between January and September 2018. One time, J.W. was transported for a visit from Wichita, and Mother did not come. J.W. began screaming and crying and locked herself in the bathroom when Mother did not appear. Brice began requiring the parents to confirm their attendance at the visits beforehand. Brice also testified that Mother tested positive for PCP on July 24, 2018. Mother was noncompliant with the color code urinalysis testing and missed several tests. Mother did not provide Brice with proof of any drug or alcohol treatment or individual therapy. Visits with G.W. and J.W. began in Mother's home but were moved to the KVC office in Kansas City.

Madeline Ford supervised this present case. Ford personally clarified the visitation guidelines with Mother on October 19, 2018. At one point, Mother had not seen her children in 23 weeks due to her failures to confirm or appear for visitation.

4

Halle Wright was the permanency case manager at KVC assigned to this case. Mother never provided proof of housing, utilities, budget, income, or transportation. Mother did not provide proof of completing a parenting class and did not follow visitation guidelines. Wright was able to confirm participation in, but not successful discharge from, Johnson County Mental Health's treatment program. Since Mother's stipulation to unfitness, her meetings with Wright were more consistent, but Wright was still concerned with Mother's substance abuse and Mother's ability to provide documentation of completion of case plan tasks. Mother had two positive UAs for PCP on July 8, 2019, and August 19, 2019, as well as another positive UA on January 3, 2019. Out of 36 possible UAs, Mother submitted to only three of them, and all three tested positive for PCP. Wright testified that, in her opinion, Mother had not made significant progress since her stipulation of unfitness. Wright believed it was not in the children's best interests to start over with visitations with Mother and that adoption was in their best interests.

The district court heard closing arguments on September 4, 2019, and took the matter under advisement. On October 8, 2019, the district court issued its memorandum decision terminating Mother's parental rights to G.W. and J.W. The district court found Mother was unfit under K.S.A. 2019 Supp. 38-2269(b)(7), (b)(8), (c)(2), and (c)(3). The district court also found the conditions of unfitness were unlikely to change in the foreseeable future because Mother continued to use PCP, failed to maintain visits with her children, failed to maintain even therapeutic contact with her children, missed numerous UAs, and failed to complete drug treatment. The district court also noted the earlier CINC case and the fact that G.W. and J.W. had been in State custody for nearly two years. The district court found that the children deserved permanency and that terminating Mother's parental rights was in their best interests. Mother timely appealed the district court's judgment.

ANALYSIS

On appeal, Mother claims the district court erred in terminating her parental rights over G.W. and J.W. Although Mother stipulated that she was an unfit parent, she argues that the district court erred in finding that her unfitness was unlikely to change in the foreseeable future. She also argues that the district court abused its discretion in finding that termination of her parental rights was in the children's best interests.

The State argues that the district court's finding that Mother's unfitness was unlikely to change in the foreseeable future was supported by substantial competent evidence. The State also argues that the district court did not abuse its discretion in finding that termination of Mother's parental rights was in the children's best interests.

A district court may terminate parental rights when it "finds by clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future." K.S.A. 2019 Supp. 38-2269(a). K.S.A. 2019 Supp. 38-2269(b) contains a nonexclusive list of factors for the district court to consider when determining if a parent is unfit. K.S.A. 2019 Supp. 38-2269(c) contains additional factors to consider when the child is not in the physical custody of a parent.

The termination of parental rights requires the district court to make three findings: (1) the parent is unfit as defined by Kansas law; (2) the parent's unfitness is unlikely to change in the foreseeable future; (3) and the termination of parental rights is in the child's best interests. See K.S.A. 2019 Supp. 38-2269(a), and (g)(1). Mother does not dispute the unfitness finding. She challenges the district court's final two findings: that her unfitness is unlikely to change in the foreseeable future, and that termination of her parental rights was in G.W. and J.W.'s best interests.

*Did the district court err in finding that Mother's unfitness was unlikely to change in the foreseeable future?*

Mother does not dispute the district court's findings that she did not complete a reintegration plan, missed visits with her children, or missed UAs. Likewise, Mother does dispute that those facts are an appropriate predictor of her unfitness in the foreseeable future. But Mother argues that she showed she could properly care for her children before the case began and during her supervised visitations at her house. Mother asserts she was doing better with her drug addiction. The State counters that Mother had yet to provide documentation to KVC showing any completion of her reintegration plan three months after she stipulated to her unfitness. The State also argues the district court was correct to look at Mother's past failures to adjust her circumstances.

Mother has a constitutionally protected liberty interest in her relationship with G.W. and J.W. Given its importance, that right has been deemed fundamental. See *In re M.S.*, 56 Kan. App. 2d 1247, 1255, 447 P.3d 994 (2019). A district court may dissolve the legal bonds between parents and children "only upon clear and convincing proof of parental unfitness." 56 Kan. App. 2d at 1255. When reviewing a district court's determination that a parent is unfit for the foreseeable future,

> "an appellate court asks whether, based on the full evidentiary record considered in a
> light favoring the State as the prevailing party, a rational fact-finder could have found
> that decision 'highly probable, *i.e.*, [supported] by clear and convincing evidence.' *In re
> B.D.-Y.*, 286 Kan. [686, 705, 187 P.3d 594 (2008)]." 56 Kan. App. 2d at 1255-56.

Appellate courts do not weigh evidence, pass on witness credibility, "or otherwise independently decide disputed questions of fact." 56 Kan. App. 2d at 1256. Any conflicts of evidence are resolved in the State's favor. 56 Kan. App. 2d at 1256.

This court uses "child time" to measure the "foreseeable future" because children perceive time differently than adults. K.S.A. 2019 Supp. 38-2201(b)(4). "[C]hildren experience the passage of time in a way that makes a month or a year seem considerably longer than it would for an adult, and that different perception typically points toward a prompt, permanent disposition." 56 Kan. App. 2d at 1263. Courts may look to parent's past conduct as an indicator of future behavior. 56 Kan. App. 2d at 1264.

K.S.A. 2019 Supp. 38-2269(b) provides a list of nonexclusive factors for a district court to consider when determining unfitness and its likelihood to change in the foreseeable future. Here, the district court found Mother was unfit under (b)(7)—that KVC made reasonable efforts to rehabilitate the family—and (b)(8)—Mother's lack of effort to adjust her "circumstances, conduct or conditions to meet the needs of the child." K.S.A. 2019 Supp. 38-2269(c) provides additional factors for when the children are not in the physical custody of a parent. Under this subsection, the district court found Mother unfit under (c)(2)—Mother's failure to maintain regular visitation with her children—and (c)(3)—Mother's failure to complete the reintegration plan ordered by the district court.

After finding Mother to be an unfit parent, the district court found Mother's unfitness was unlikely to change in the foreseeable future because the issues that brought the children into State custody had not be addressed or fixed. To support its determination, the district court made several findings:

> "The Court finds and concludes that these conditions of unfitness are unlikely to change in the immediate or foreseeable future. The concerns which brought these children into State custody on December 14, 2017 have not been addressed or rectified. [Mother] continues to use PCP, she failed to maintain visits with her children, she failed to utilize parenting skills in order to maintain even therapeutic contact with her children, she missed numerous UA's, she failed to complete drug treatment and she remains addicted to PCP. Her children had a prior CINC case that did not result in the children being placed with her. Her parental rights have been terminated on other children. She

8

was offered a reintegration plan and a case plan and neither was completed. [G.W.] and [J.W.] have been in custody for two years.

"The past is a predictor of the future. The Court finds and concludes that the conditions of unfitness of the mother is unlikely to change in the immediate or foreseeable future. The father of both children has relinquished his parental rights."

Clear and convincing evidence supports the district court's findings. In accepting Mother's stipulation to unfitness, the district court continued the trial for 90 days to give Mother a chance to "turn it around." That did not happen. After Mother stipulated to her unfitness, she took two drug tests. Both tested positive for PCP. The therapeutic visits were stopped by KVC and Ross following the fourth visit when G.W. accused Mother of beating him with a belt and Mother grabbed G.W.'s arm and yelled at him. Since Mother's stipulation, she had met with her case manager more regularly to discuss her case and reintegration plans. But, at the time of the termination hearing, Mother had not provided her case manager with proof of housing, utilities, or reliable transportation. Likewise, Mother had not provided any proof that she was continuing or had completed any type of drug treatment. At the hearing, Wright testified in her belief that Mother had not made significant progress toward reintegration since her stipulation.

At the time of the termination hearing, G.W. and J.W. had been in State custody for nearly two years. This was their second CINC case. Two years is a long time in "child time." In those two years, Mother made no measurable progress toward achieving reintegration with the children. The district court gave her 90 more days, and Mother still failed to make any significant progress. Based on the full evidentiary record considered in a light favoring the State, we conclude the district court's finding that Mother's unfitness was unlikely to change in the foreseeable future was supported by clear and convincing evidence. See *In re M.S.*, 56 Kan. App. 2d at 1255-56.

9

*Did the district court abuse its discretion in finding that termination of Mother's parental rights was in the children's best interests?*

Next, Mother argues that the district court abused its discretion by finding that termination of her parental rights was in the children's best interests. She argues that in making this finding, the district court gave no consideration to the children's physical, mental, or emotional needs. Mother asserts the best course of action for her children was reintegration into her home. The State asserts the district court did not abuse its discretion given the young ages of the children, the length of time since removal, Mother's PCP use, and this being the children's second removal proceeding. The State argues the district court's decision was necessary to provide G.W. and J.W. with permanency.

Once a district court determines a parent is unfit and that unfitness is unlikely to change in the foreseeable future, it must determine if termination is in a child's best interests. K.S.A. 2019 Supp. 38-2269(a), and (g)(1). "In making the determination, the court shall give primary consideration to the physical, mental and emotional health of the child. If the physical, mental or emotional needs of the child would best be served by termination of parental rights, the court shall so order." K.S.A. 2019 Supp. 38-2269(g)(1).

A district court's decision that termination of parental rights is in the best interests of the children is reviewed for abuse of discretion. A district court abuses its discretion if: (1) no reasonable person would agree with its ruling; (2) it commits an error of fact; or (3) it commits an error of law. See *In re M.S.*, 56 Kan. App. 2d at 1264. Mother does not allege the district court committed a factual or legal error. The party asserting the district court abused its discretion bears the burden of showing such abuse of discretion. *Gannon v. State*, 305 Kan. 850, 868, 390 P.3d 461 (2017).

In giving primary consideration to the physical, mental, and emotional health of the children, "the court must weigh the benefits of permanency for the children without

10

the presence of their parent against the continued presence of the parent and the attendant issues created for the children's lives." *In re K.R.*, 43 Kan. App. 2d 891, 904, 233 P.3d 746 (2010). The district court should consider the nature and strength of the relationships between the children and the parent and the trauma that termination may cause the children and weigh those considerations against further delay in finding permanency for the children. 43 Kan. App. 2d at 904.

Here, a reasonable person could agree with the district court's finding that termination of Mother's parental rights was in G.W.'s and J.W.'s best interests because the children need permanency. It had been nearly two years since the children's removal from Mother's home—not counting the previous CINC case. Mother had failed to complete almost all of her tasks in the reintegration plan. She continued to struggle with substance abuse and frequently missed her visits with the children. G.W. often acted out after the visits. He told Wright he did not want to return to Mother's home. Following one scheduled visit, J.W. screamed and cried when she learned Mother was not coming.

The district court stated in its memorandum decision that it did not doubt that Mother loved G.W. and J.W. "But we must judge these cases based mostly upon actions, not intentions, and we must keep in mind that a child deserves to have some final resolution within a time frame that is appropriate from that child's sense of time." *In re A.A.*, 38 Kan. App. 2d 1100, 1105, 176 P.3d 237 (2008). Based on the evidence at the hearing, we conclude the district court did not abuse its discretion in finding that termination of Mother's parental rights was in the children's best interests.

Affirmed.

11